UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB47, acting by and through its special servicer, Berkeley Point Capital LLC d/b/a Newmark, as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2018,<br><br>                              Plaintiff,<br><br>       v.<br><br>2426 UNIVERSITY FUND, LLC; AVRAHAM BENAMRAM; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,<br><br>The names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Premises Herein Described.<br><br>                              Defendants. | Civil Action File No.<br>_____<br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT** |

      Plaintiff U.S. Bank National Association ("Trustee"), as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB47 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff"), acting by and through its special servicer, Berkeley Point Capital LLC d/b/a Newmark ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2018 (the "PSA"), states its complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1. Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Cincinnati, Ohio.

2. Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

3. Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth. Based upon the Ohio citizenship of Trustee, Plaintiff is a citizen of Ohio.

4. Upon information and belief, defendant 2426 University Fund, LLC ("Borrower") is a New York limited liability company with an address at 4419 Third Avenue, Suite 4A, Bronx, New York 10457; Attn: Avraham Benamram. Plaintiff names Borrower as a defendant herein because it is, inter alia, the owner of certain real property and improvements located at 228 E. Tremont Avenue, Bronx, New York, identifiable as Block 2804, Lot 11, and more particularly described in Exhibit 1 annexed hereto and made a part hereof (the "Property"), the obligor of the Note (defined below) and mortgagor of the Mortgage (defined below).

5. As Borrower is a limited liability company, the citizenship of its members determine that of Borrower. Upon information and belief, Avraham Benamram ("Guarantor"), a resident and citizen of the State of New York, and Beyad Invest, Inc., a corporation organized under the laws of and a citizen of the state of Delaware, are the sole members of Borrower. Based on the citizenship of its members, Borrower is a citizen of both New York and Delaware.

6. Upon information and belief, Guarantor is an individual with an address at 330 East 75th Street, Suite 11L, New York, New York 10021.

7. Plaintiff names Guarantor as a party defendant herein because Guarantor guaranteed Borrower's obligations pursuant to the Guaranty (defined below).

8. Defendant New York City Department of Finance ("DOF") is an agency authorized to administer and collect all taxes for the City of New York and has a principal place of business located at 66 John Street, New York, New York 10038.

9. Plaintiff names DOF as a party defendant herein because of any claim or interest it might have against the Property as a possible lienor with respect to unpaid New York City Business Corporation Taxes.  Because DOF was created and exists under the laws of the City of New York, DOF is a citizen of New York.

10. Defendant New York City Office of Administrative Trials and Hearings ("OATH") is a judicial tribunal that holds hearings for violations across several New York City agencies and has a principal place of business located at 100 Church Street, New York, New York 10007.

11. Plaintiff names OATH as a party defendant herein because of any claim or interest it might have against the Property as a result of any judgments it holds as against Borrower. Because OATH was created and exists under the laws of the City of New York, OATH is a citizen of New York.

12. John Doe No. 1 through John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff and are named herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Property or any part thereof, which is subject to the lien of the Mortgage (as defined in Paragraph 19 of this Complaint).

13. Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1) because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

#245033623_v3 222815.00005

14. Pursuant to Section 10.02(b) of the Loan Agreement (defined below), the state and federal courts located in Bronx County, New York are the exclusive venue of disputes under the subject contract. Specifically, Section 10.02(b) of the Loan Agreement provides in relevant part:

> Borrower agrees that any controversy arising under or in relation to the Note, the Security Instrument, this Loan Agreement or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction will have jurisdiction over all controversies that may arise under or in relation to the Note, any security for the Indebtedness or any other Loan Document. Borrower irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise. However, nothing in this Section 10.02 is intended to limit Lender's right to bring any suit, action or proceeding relating to matters under this Loan Agreement in any court of any other jurisdiction.

15. Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

16. Plaintiff brings this action to foreclose a mortgage in the original principal amount of $2,053,000.00 secured by, inter alia, in the Property.

## FACTUAL BACKGROUND

### FIRST COUNT
**(Mortgage Foreclosure)**

A. **The Loan.**

17. Pursuant to that certain Loan Agreement dated as of November 30, 2017 (the "Loan Agreement") and executed by and between Borrower and Greystone Servicing Corporation, Inc., a Georgia corporation ("Original Lender"), Plaintiff's predecessor-in-interest, Original Lender made a loan to Borrower in the original principal amount of $2,053,000.00 (the "Loan").

18. To evidence its indebtedness under the Loan Agreement, on or about November 30, 2017, Borrower executed and delivered to Original Lender that certain New York

Consolidated, Amended and Restated Note in the original principal amount of $2,053,000.00 (the "Note"). A true and correct copy of the Note is annexed hereto as Exhibit 2 and made a part hereof.

19. To secure payment of the Note, Borrower executed, acknowledged and delivered to Original Lender a Consolidation, Extension and Modification Agreement, dated November 30, 2017 (the "CEMA"), pursuant to which Borrower agreed to, inter alia, consolidate the Existing Mortgages (as defined therein) to form a single lien in the amount of $2,053,000.00 as memorialized by the Multifamily Mortgage, Assignment of Rents and Security Instrument (the "Mortgage") that is exhibited to the CEMA.

20. On December 8, 2017, Original Lender duly recorded the CEMA against the Property in the Office of City Register of the City of New York (the "Register's Office") as City Register File Number ("CRFN") 2017000451124, and duly paid the mortgage recording taxes.

21. By the Mortgage, Borrower grants a security interest in favor of the holder of the Loan in, inter alia, the Land, the Improvements, the Fixtures, the Personalty, the Rents, the Leases and the Reserve Fund (all as defined in the Mortgage) (collectively, the "Collateral"). The Collateral is more particularly described in Exhibit 3 annexed hereto and made a part hereof.

22. To induce Original Lender to give the Loan and to further secure its repayment, Guarantor and non-party Albert Benamran executed a Guaranty dated November 30, 2017 (the "Guaranty"), wherein and whereby Guarantor and Albert Benamran absolutely, unconditionally, and irrevocably guaranteed, inter alia, the full and prompt payment when due of all amounts for which Borrower is personally liable (The Loan Agreement, the Note, the Mortgage, the Guaranty, and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1]

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

B.    **Assignment of the Loan Documents to Interim Holder**

23.    Original Lender executed an allonge to the Note ("Interim Allonge"), indorsed in favor of Federal Home Loan Mortgage Corp. ("Interim Holder"), and delivered the Note, with the Interim Allonge, to Interim Holder.  By virtue of this delivery, Original Lender transferred to Interim Holder all right, title and interest in and to the Note and Interim Holder became the holder of the Note.

24.    Original Lender also executed an Assignment of Consolidated Security Instruments dated November 30, 2017 and in favor of Interim Holder (the "Interim Assignment of Mortgage") and delivered the Interim Assignment of Mortgage to Interim Holder.  By virtue of this execution and delivery, Original Lender transferred to Interim Holder all right, title and interest in and to the Note and Mortgage and Interim Holder became the assignee of the Note and Mortgage.  On December 8, 2017, Interim Holder recorded the Interim Assignment of Mortgage in the Register's Office as CRFN 2017000451125.

25.    To perfect its interest in the Collateral, on December 13, 2017, Interim Holder filed a Uniform Commercial Code Financing Statement with the New York Secretary of State (the "SOS") as Filing Number 201712130607079 (the "State UCC-1").  The State UCC-1 names Interim Holder as the secured party and Borrower as the debtor.

26.    To further perfect its interest in the Collateral, on December 19, 2017, Interim Holder recorded a Uniform Commercial Code Financing Statement with the Register's Office as CRFN 2017000462187 (the "County UCC-1").  The County UCC-1 names Interim Holder as the secured party and Borrower as the debtor.

#245033623_v3 222815.00005

C.  **Assignment of the Loan Documents to Plaintiff**

27. Interim Holder executed an allonge to the Note, dated March 27, 2018 and indorsed in favor of Plaintiff (the "Plaintiff Allonge"), and delivered the Note, with the Plaintiff Allonge, to Plaintiff. By virtue of this delivery, Interim Holder transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

28. Interim Holder also executed an Assignment of Mortgage dated March 27, 2018, in favor of Plaintiff (the "Plaintiff Assignment of Mortgage") and delivered the Plaintiff Assignment of Mortgage to Plaintiff. By virtue of this execution and delivery, Original Lender transferred to Plaintiff all right, title and interest in and to the Note and Mortgage and Plaintiff became the assignee of the Note and Mortgage. On March 29, 2018, Plaintiff recorded the Plaintiff Assignment of Mortgage in the Register's Office as CRFN 2018000106122.[2]

29. By Uniform Commercial Code Financing Statement Amendment filed with the SOS on April 16, 2018 as Filing Number 201804168165880, Interim Holder assigned the State UCC-1 to Plaintiff. Additionally, on July 30, 2022, Plaintiff filed a Uniform Commercial Code Continuation with the SOS as Filing Number 202207306245364 (the "State UCC Continuation"). The State UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

30. By Uniform Commercial Code Financing Statement Amendment recorded with the Register's Office on March 29, 2018 and on April 19, 2018 as CRFN 2018000106123 and CRFN 2018000131544, respectively, Interim Holder assigned the State UCC-1 to Plaintiff. Additionally, on August 3, 2022, Plaintiff filed a Uniform Commercial Code Continuation with the Clerk's

---

[2] On April 19, 2018, Plaintiff recorded a Corrective Assignment of Mortgage with the Register's Office as CRFN 2018000131543 to correct Plaintiff's address as identified in the Plaintiff Assignment of Mortgage.

Office as CRFN 2022000307696 (the "County UCC Continuation"). The County UCC Continuation names Plaintiff as the secured party and Borrower as the debtor.

31. Based on the foregoing, Plaintiff is the current holder of the Loan and the Loan Documents as of the date of commencement.

**C.     Borrower's Defaults Under the Loan Documents**

32. Section 3 of the Note obliges Borrower to remit all payments towards the repayment of the Indebtedness on the first day of each month (the "Payment Date") beginning on January 1, 2018, and continuing until the December 1, 2037, the Loan's Maturity Date.

33. Section 8.01(a) of the Loan Agreement provides that it shall be an Event of Default if Borrower fails to pay or deposit when due any amount required by the Loan Documents.

34. Section 5(a) of the Note provides that Borrower must pay a late charge of 5% of any overdue payment or amount due.

35. Section 5(b) of the Note provides that, upon an Event of Default, then the interest rate applicable to the Loan will increase to the Fixed Annual Interest Rate or the Variable Annual Interest Rate, as applicable, plus 4% (the "Default Rate").

36. By that certain Notice of Payment Default dated September 1, 2023 (the "Notice of Default"), Plaintiff, through its master sub-servicer for the Loan, notified Borrower and Guarantor that, inter alia, Borrower has failed to remit the Fixed Monthly Principal and Interest Payment Amount due on the August 2023 Payment Date in accordance with Section 5 of the Note, and demanded that Borrower remit all sums due and owing under the Loan Documents.

37. Despite receipt of the Notice of Default, Borrower thereafter failed to remit not only the Fixed Monthly Principal and Interest Payment Amount due on the August 2023 Payment Date but each Fixed Monthly Principal and Interest Payment Date Amount due monthly thereafter.

38. Accordingly, an Event of Default has occurred and is continuing under the Loan Documents since August 1, 2023 as a result of, inter alia, Borrower's continued failure to remit the sums due and owing on the August 2023 Payment Date and each Payment Default occurring monthly thereafter (the "Default").

39. The Loan Documents provide that, upon the occurrence of an Event of Default, the holder of the Mortgage shall be entitled to collect the rents and profits from the Property or to have a receiver appointed to take possession of the Property and to collect the rents and profits therefrom.

40. The Loan Documents further provide that upon an Event of Default, Borrower shall be liable for all costs incurred for collecting, securing or attempting to collect, or secure any amounts due under the Loan Documents, including reasonable attorneys' fees and other legal costs.

41. As a result of Borrower's commission of and failure to cure the Defaults, by Notice of Acceleration dated February 21, 2024 (the "Notice of Acceleration"), Plaintiff, through counsel, notified Borrower and Guarantor that, inter alia, Plaintiff revoked Borrower's license to collect the Rents and profits generated by the Property and accelerated all sums due and owing under the Loan Documents.

42. Despite receipt of the Notice of Acceleration, to date, Borrower has neither paid the amounts due under the Loan Documents nor turned over the Rents and profits generated by the Property to Plaintiff, and, thus, the Loan remains in a defaulted, accelerated state.

43. There is now due, owing and payable to Plaintiff under the Loan Documents: (i) $1,878,879.86 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Loan Documents.

44. In order to protect the lien and security represented by the Mortgage during the pendency of this action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property. Plaintiff submits that any amount so paid and expended by it during the pendency of this action should be added, pursuant to the Loan Documents, to its claim and, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Loan Documents.

45. The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the Property, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

46. Plaintiff has brought no other action or proceeding to recover any part of the Indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Adjudging and decreeing the amounts due it as demanded in this Complaint by means of Borrower's default under the Loan Documents;

B. Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Property, which is the subject of this foreclosure action, subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property and each and every part and parcel thereof;

C. Adjudging and decreeing that (a) the Property may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to

#245033623_v3 222815.00005

taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Property may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (i) the expenses of said sale, (ii) the costs, allowances, and disbursements of this action, (iii) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (iv) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Property, (v) its expenses of collection, including reasonable attorneys' fees, and (vi) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money property applicable thereto will pay the same;

      D.      Adjudging and decreeing that Borrower be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of New York's Real Property Actions and Proceedings Law;

      E.      Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

      F.      Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this complaint,

but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

      G.      Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Security Interest Foreclosure)

47.      Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 45 above, as if the same were set forth and repeated at length herein.

48.      When Borrower executed the CEMA, it granted a valid and enforceable security interest to Original Lender, its successors and assigns, in the Collateral.

49.      Plaintiff holds a duly perfected security interest in the Collateral by virtue of the recorded CEMA as well as the recorded County UCC-1, the filed State UCC-1, and the subsequent assignments and continuations thereof.

50.      Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold together with the Property at a single public sale.

51.      No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

      A.      Adjudging that the Collateral be sold together with the Property at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

      B.      Barring and foreclosing the defendants of all equity of redemption in and to the aforesaid personal property;

      C.      Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

      D.      Awarding such other and further relief as the Court may deem just and proper.

## THIRD COUNT
### (Possession)

52. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 51 above, as if the same were set forth and repeated at length herein.

53. By reason of Borrower's default under the terms of the Loan Documents, Plaintiff is entitled to possession of the Property and the Collateral located thereon.

54. Borrower is now in possession of the Property and has deprived, and continue to deprive, Plaintiff of possession of the Property and Collateral.

**WHEREFORE**, Plaintiff demands judgment against the defendants:

A. Granting Plaintiff, its assignee or the purchaser of the Property at the foreclosure sale, possession of the Property and the Collateral;

B. Awarding Plaintiff damages for mesne profits;

C. Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D. Awarding such other and further relief as the Court may deem just and proper.

## FOURTH COUNT
### (Appointment of a Receiver)

55. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 54 above, as if the same were set forth and repeated at length herein.

56. The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrower's Assets") are among the assets of Borrower.

57. Except for certain limited qualifications as set forth in the Loan Documents, Borrower has no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the Collateral securing the Loan.

58.     The Loan Documents expressly allow Plaintiff to seek, and indicate Borrower's express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

59.     Borrower and its agents are still in possession of Borrower's Assets.

60.     Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the sufferance of continuous waste and a dissipation or diminution in value with respect to the Borrower's Assets, if Borrower remains in control thereof.

61.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrower's Assets.

## FIFTH COUNT
### (Breach of the Guaranty)

62.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 61 above, as if the same were set forth and repeated at length herein.

63.     To induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed, acknowledge and delivered to Original Lender, its successors and assigns, the Guaranty.

64.     Pursuant to the Section 3(a) of the Guaranty, "Guarantor absolutely, unconditionally, and irrevocably guarantee[d] . . . [t]he full and prompt payment when due, whether at the Maturity Date or earlier, by reason of acceleration or otherwise, of all amounts for which Borrower is personally liable under Article III of the Loan Agreement."

65.     Pursuant to Section 3.03(i) of the Loan Agreement, "Borrower will be personally liable to Lender for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of . . . Borrower['s] fail[ure] to pay to Lender upon demand after an Event of Default all rents to which Lender is entitled . . . ."

#245033623_v3 222815.00005

66. By the terms of the foregoing provisions of the Loan Agreement and Guaranty, Guarantor is jointly and severally liable, in an amount to be determined, for the losses, damages, costs, expenses, liabilities, claims or other obligations incurred by Plaintiff arising out of or in connection with Borrower's failure to turn over the rents and profits generated by the Property upon Plaintiff's revocation of Borrower's license to collect such rents and profits.

67. Moreover, pursuant to Section 3(a)(iv) of the Guaranty, Guarantor further agreed to reimburse Plaintiff for "[a]ll costs and expense, including reasonable Attorneys' Fees and Costs, incurred by Lender in enforcing its rights under this Guaranty."

68. Plaintiff is the current holder of the Loan Documents, including, inter alia, the Guaranty.

69. Plaintiff seeks to foreclose upon the Mortgage and recover the full amount of the Indebtedness pursuant to the terms of the Loan Documents, including attorneys' fees and costs, and that Guarantor be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the Indebtedness remaining unsatisfied after the sale of the Property and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

70. Plaintiff has brought no other action or proceeding to recover any part of the Indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

B. Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 31, 2024

**HOLLAND & KNIGHT LLP**

By: */s/ David V. Mignardi*
David V. Mignardi, Esq.
Brandon L. King, Esq.
Attorneys for Plaintiff
  *U.S. Bank National Association,*
  *as Trustee for the Registered Holders of*
  *J.P. Morgan Chase Commercial Mortgage*
  *Securities Corp., Multifamily Mortgage Pass-*
  *Through Certificates, Series 2018-SB47,*
  *acting by and through its special servicer,*
  *Berkeley Point Capital LLC d/b/a Newmark, as*
  *Special Servicer under the Pooling and Servicing*
  *Agreement dated as of March 1, 2018*
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 751-3001
david.mignardi@hklaw.com
brandon.king@hklaw.com

#245033623_v3 222815.00005